Faisal ALI, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–98–309–CR.

Court of Appeals of Texas,
Waco.

July 12, 2000.

Rehearing Overruled Aug. 23, 2000.

Walter M. Reaves, Jr., West, for appellant.

Patrick C. Batchelor, Crim. Dist. Atty., Damara H. Watkins, Asst. Crim. Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

Faisal Ali was found guilty by a jury of the felony offense of possession with intent to use, sell, circulate, or pass a forged or counterfeit temporary driver's license. The trial court sentenced him to three years probation. He contends (1) the evidence is legally and factually insufficient to support his conviction, (2) he received ineffective assistance of counsel and (3) his punishment violates his constitutional right against cruel and unusual punishment. The judgment of the trial court is affirmed.

### FACTS

Trooper Jay Hickman of the Texas Department of Public Safety was engaged in routine traffic patrol, northbound on Interstate 45 in Navarro County, when he observed two speeding vehicles traveling southbound. Both cars were traveling in excess of 100 miles per hour and weaving in and out of traffic. After stopping both vehicles, Hickman requested identification from the drivers. Ali, was later identified as the driver of the first car, but he did not have valid identification at the time. Hickman placed both drivers under arrest for Deadly Conduct because of their reckless driving.

Trooper Hickman then approached the car that Ali was driving and asked the front passenger, Ali's sister, for identification and vehicle registration. She produced her driver's license and then opened the glove compartment to retrieve the documents for the rental vehicle. She grabbed a plastic sack containing several documents and a checkbook. In an attempt to discern Ali's true identity, Hickman asked for the sack and looked through it. Trooper Hickman testified that he used the driver's license number listed under Ali's name on the rental agreement to run through the computer to determine Ali's identity and whether Ali had a driver's license. There was conflicting testimony, however, regarding whether Ali's name was listed on the rental agreement in addition to his sister's name. While going through the sack, Hickman discovered four temporary driver's permits and a checkbook issued to Noman Sharif. When asked about the instruments, Ali responded that he knew about them and would explain to Trooper Hickman, but that he first needed to speak with his sister. After speaking with his sister, however, Ali told Trooper Hickman that he had nothing to say. Ali and the other driver were taken to jail.

The temporary driver's licenses were identified as counterfeit documents by the Texas Department of Public Safety's driver's license service. The counterfeit licenses all included male descriptions. And they each had different license numbers and different expiration dates.

## THE EVIDENCE

■ To convict Ali under § 521.456(c), the State had to prove:

1) a person
2) *possessed*
3) *with the intent to use, circulate, or pass*
4) a forged or counterfeit
5) instrument
6) not printed, manufactured, or made by or under the direction of; or issued, sold, or circulated by or under the direction of

7) a person, board, agency or authority authorized to do so under this chapter or under the laws of the U.S., another state, or a Canadian province.

TEX. TRANSP. CODE ANN. § 521.456 (Vernon 1999) (emphasis added). In issues one and two, Ali attacks the legal and factual sufficiency of the State's evidence of possession and intent. The State's evidence establishing his possession of the counterfeit instruments include the following: Ali was the only male in the car where the counterfeit items were found and all the counterfeit licenses included male descriptions; Ali was in possession of the car when it was stopped; the documents in the glove box were equally accessible from the driver's seat; and the comments made by Ali to the arresting trooper admitting knowledge of the documents. The State's evidence establishing his intent to use, circulate, or pass the counterfeit driver's licenses include a corresponding checkbook that was found with the licenses. A checkbook which matches the name on a temporary driver's licenses is evidence of intent. *Baker v. State*, 467 S.W.2d 428, 430 (Tex.Crim.App.1971) (allowed the defendant's temporary driver's license that matched forged checks to be introduced as evidence of "intent, identity, system, scheme, and design").

The contrary evidence in support of Ali's argument establishes: there were five occupants in the rental vehicle where the counterfeit instruments were found, including one other adult; Ali's testimony that he was not responsible for renting the car and was not present when the car was rented; Ali's testimony that he never looked in the glove box; the fact another adult was sitting on the passenger side of the vehicle and closest to the glove box; and there was no direct evidence that Ali was responsible for securing or producing the licenses. There was conflicting testi-

mony as to whether Ali was listed as a driver on the rental agreement.

## ISSUE ONE: LEGAL SUFFICIENCY

In his first issue, Ali contends the evidence was legally insufficient to support his conviction because the evidence fails to establish that he was in possession of the counterfeit licenses or that he had any intent to use them in any manner. When reviewing a claim of legal insufficiency of the evidence, we must determine, after considering all the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 967 S.W.2d 410, 412 (Tex.Crim.App.1998); *Westfall v. State*, 970 S.W.2d 590, 595 (Tex. App.—Waco 1998, pet. ref'd). This review is the same for both direct and circumstantial evidence cases. *Green v. State*, 840 S.W.2d 394, 401 (Tex.Crim.App.1992); *see also Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991).

When viewing all the evidence in the light most favorable to the verdict, the jury could have found Ali was in possession of the counterfeit instruments with the intent to use them beyond a reasonable doubt and rejected Ali's strategy to create doubt as to the elements of possession and intent to use, circulate, or pass. Thus, the evidence was legally sufficient. Ali's first issue is overruled.

## ISSUE TWO: FACTUAL SUFFICIENCY

■■■ In Ali's second issue, he asserts that the evidence is factually insufficient to establish he was in possession of the counterfeit licenses and he had the intent to use, circulate, or pass them. If a party is attacking the factual sufficiency of an adverse finding on an issue to which they did not have the burden of proof, they must demonstrate that there is insufficient evidence to support the adverse finding.

*Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim.App. 2000).

The complete and correct standard a reviewing court must follow to conduct a *Clewis*[1] factual sufficiency review of the elements of a criminal offense *asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. . . .*

*Id.* at 11. While evidence may be in conflict, it is for the jury, as trier of fact, to resolve any conflicts and inconsistencies in the evidence. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex.Crim.App.1982). If the reviewing court determines a manifest injustice has occurred, and it would, therefore, be improper to defer to the fact finder's decision, then the reviewing court must provide a clearly detailed explanation of that determination that takes all of the relevant evidence into consideration. *Johnson*, at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). Even where this is no conflict, the jury may give no weight to some evidence, and thereby reject part or all of a witness' testimony. *See Beardsley v. State*, 738 S.W.2d 681, 684 (Tex.Crim.App.1987). The jury is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). We find the jury's verdict was not so contrary to the evidence to make their verdict wrong and unjust. Accordingly, we overrule Ali's second issue.

## ISSUE THREE: INEFFECTIVE ASSISTANCE OF COUNSEL

■■■ In issue three, Ali contends that he received ineffective assistance of counsel, where (1) his attorney failed to request a limiting instruction for a statement he made while under arrest, and before being

---

1. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App.1996).

administered the required warnings, and (2) his attorney failed to object to the testimony concerning the contents of a document. Texas courts must adhere to the United States Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel. *Thompson v. State,* 9 S.W.3d 808 (Tex.Crim.App. 1999); *Hernandez v. State,* 726 S.W.2d. 53, 55 (Tex.Crim.App.1986). A defendant must show that: (1) counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Walker v. State,* 4 S.W.3d 98 (Tex.App.—Waco 1999, pet. ref'd). This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a reliable result. *McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App. 1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). In other words, the appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson,* 9 S.W.3d at 812.

The defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *Walker,* 4 S.W.3d at 106. An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Ex Parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim.App.1991). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson,* 9 S.W.3d at 813. To defeat the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland,* 928 S.W.2d at 500.

"An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct."

*Thompson,* 9 S.W.3d at 814.

First, Ali argues that he received ineffective assistance of counsel because his attorney did not request a limiting instruction for the statement made by Ali before he received the Miranda warnings. Trooper Hickman testified that Ali stated he knew about the counterfeit documents and that he would explain everything after a talk with his sister. "We need not determine whether warnings were given to appellant or whether his statements were the product of custodial interrogation because the statements were introduced during the State's rebuttal and were introduced for purposes of impeachment." *Lykins v. State,* 784 S.W.2d 32, 35–36 (Tex.Crim.App.1989). "The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In this case, Trooper Hickman's testimony was rebuttal evidence used by the State to impeach Ali's testimony that he did not tell the trooper he knew about the counterfeit licenses and that he would explain everything after speaking with his sister. This is an acceptable use of a statement obtained in violation of Miranda. *See Lykins,* 784 S.W.2d at 35.

Having determined the pre-*Miranda* statement was admissible only for the limited purpose of impeachment,

we apply the *Strickland* test to determine whether defense counsel was ineffective for failing to request a limiting instruction. The failure to request a limiting instruction is not, by itself, ineffective assistance of counsel. *Greene v. State*, 928 S.W.2d 119, 124 (Tex.App.—San Antonio 1996, no pet.). Ali's trial counsel, however, should have requested an instruction limiting the purpose for which the jury could consider the rebuttal evidence—impeachment.

"[A]lthough hindsight speculation may suggest a limiting instruction of some nature, it is reasonable that, as a trial tactic, counsel did not wish to remind the jury of those matters." *Abbott v. State*, 726 S.W.2d 644, 649 (Tex.App.—Amarillo 1987, pet. ref'd). *See also Garcia v. State*, 887 S.W.2d 862, 881 (Tex.Crim.App.1994) (holding that trial counsel's failure to request a limiting instruction did not constitute ineffective assistance because counsel did not want to draw more attention to the incriminating evidence). Nevertheless, Ali argues that this case is analogous to *Owens*, in which this court held that the defendant did not receive effective assistance of counsel because the attorney failed to ask for a limiting instruction concerning the use of a prior statement. *Owens v. State*, 916 S.W.2d 713 (Tex.App.—Waco, 1996, no. pet). However, in that case, the prior statement was the *only* evidence the jury could consider to convict the defendant. Here, the prior statement for which Ali argues counsel should have requested an instruction was not the *only* evidence presented for the jury's consideration. So Ali's counsel may have purposely decided not to request a limiting instruction to prevent further attention being drawn to the alleged incriminating statements. Thus, making this case distinguishable from *Owens*, where there was no plausible trial strategy by which to excuse defense counsel's failure to request a limiting instruction. *See id.*

Though in hindsight, counsel should have requested an instruction limiting the evidence for impeachment purposes only, however, we are not convinced on this record that counsel's failure to do so rose to the level of ineffective assistance. Since the record does not reflect counsel's reason for not requesting the instruction, we find no basis for concluding he did not exercise reasonable professional judgment. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim.App.1994). Even if we assume the first prong was met, Ali has failed to demonstrate with a reasonable probability, a different outcome would have resulted but for trial counsel's failure to seek a limiting instruction. Thus, the second *Strickland* requirement is not met and Ali's claim of ineffective assistance of counsel for failure to request a limiting instruction fails.

■■■ Second, Ali contends that he received ineffective assistance of counsel because his attorney did not object to the arresting officer's testimony concerning the contents of the rental agreement. The best evidence rule requires that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." Tex.R. Evid. 1002. Generally speaking, the only competent evidence to prove the contents of a document is the document itself. But when the document and its contents are only collaterally related to the issues in the case, the best evidence rule does not apply. *Prudential Ins. Co. of America, Inc. v. Black*, 572 S.W.2d 379, 380 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ).

■■■ Here, the rental agreement and its contents were only collaterally related to the controlling issue of whether Ali possessed the forged instruments. The aim was not to prove the contents of the rental agreement, but as background relating to the ascertainment of Ali's identity, which was not a controlling issue to be decided by the jury. Therefore, the best evidence rule was not applicable. Thus, the first Strickland requirement is not met and Ali's claim of ineffective assistance of counsel fails. Accordingly, we hold that Ali's

representation did not fall below objective standards of reasonableness and that Ali was not denied a fair trial. His third issue is overruled.

ISSUE FOUR: CRUEL AND UNUSUAL PUNISHMENT?

■ Ali contends in issue four that his sentence constitutes cruel and unusual punishment because he was sentenced to three years community supervision for an offense which was subsequently reduced to a class C misdemeanor. Ali argues that § 521.456 entitles him to be sentenced in accordance with the revised version of the statute under which he was convicted. The 1997 amendments to the Transportation Code, effective September 1, 1997, reclassified the offense of possessing a forged or counterfeit driver's license from a felony to a class C misdemeanor. *Compare* Acts 1987, 70th Leg., R.S., ch. 861, § 2, 1987 Tex. Gen. Laws 2929 with TEX. TRANSP. CODE ANN. § 521.456 (Vernon 1999). Punishment for the offense was reduced from two to five years confinement to a fine not to exceed $500. TEX. PENAL CODE § 12.23 (Vernon 1999). In amending the Penal Code, the legislature specifically provided that an offense committed before the effective date of the amendments is governed by the law in effect when the offense was committed. Acts 1997, 75th Leg., R.S., ch. 823, § 2, 1997 Tex. Gen. Laws 2659. Thus, the amendments apply only to offenses committed on or after September 1, 1997.

■ Ali committed the offense on April 30, 1996, which was more than one year before the effective date of the amendment. Furthermore, he was tried and sentenced in the same manner as all criminal defendants who committed similar offenses prior to September 1, 1997, the effective date of the revised statute. Therefore, the trial court properly applied the pre-revision text of the Transportation Code in assessing his punishment. Ali's fourth issue is overruled.

CONCLUSION

Having resolved all four issues against Ali, we affirm the judgment of the trial court.